**LAWYERS COMMITTEE FOR HUMAN RIGHTS and Arthur C. Helton, Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

No. 87 Civ. 1115 (JMW).

United States District Court, S.D. New York.

Sept. 15, 1989.

Richard F. Ziegler, Martha F. Davis, Thomas G. Dagger, Beth L. Golden, Cleary, Gottleib, Steen, & Hamilton, New York City, for plaintiffs.

The Lawyers Committee for Human Rights, Chad A. Vignola, Sp. Asst. U.S. Atty., New York City, for defendants.

## OPINION AND ORDER

WALKER, District Judge:

Plaintiffs, The Lawyers Committee for Human Rights ("the Committee") and Arthur C. Helton ("Helton"), seek the disclosure of materials allegedly in the possession of several government agencies—namely, the Federal Bureau of Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the United States Department of State ("State"), and the Immigration and Naturalization Service ("INS") (collectively, "the Government"). Specifically, plaintiffs wish to obtain documents under the Freedom of Information Act ("FOIA") relating to the exclusion of their client Patricia Lara Salive ("Lara"), a Columbian journalist, from the United States. Plaintiffs also seek certain documents concerning the overall process by which the Government makes its decisions to exclude individuals from this country.

At issue in the present action is the adequacy of the Government's so-called *Vaughn* affidavits, submitted in order to justify the agencies' withholding of documents. A *Vaughn* affidavit, named for *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), is an affidavit by a federal agency claiming specific statutory exemptions within the FOIA, and de-

tailing the applicability of these exemptions to the withheld material.

Defendants move for summary judgment to dismiss plaintiffs' complaint based on the agencies' assertion that their affidavits, and subsequent supplemental affidavits, fulfill their obligations under FOIA. Plaintiffs oppose defendants' motion and urge the Court to require the agencies to release the documents in question. In the alternative, both parties request that the Court review the documents *in camera* to determine whether or not the Government must release them. For the reasons stated below, defendants' and plaintiffs' motions for summary judgment are granted in part and denied in part.

## I. BACKGROUND

*A. Lara's Exclusion and Subsequent FOIA Requests*

On October 12, 1986, Lara, a C⌐ ̣ nbian journalist working for the well-known Bogata newspaper *El Tiempo*, flew into New York's Kennedy Airport to attend a journalism awards ceremony at Columbia University by invitation of the school. An INS agent detained her after finding her name in the INS's National Automated Immigration Lookout System ("NAILS") Service Lookout Book which identifies persons as "excludable" for numerous reasons, including being suspected of communist or subversive beliefs or actions. The Lookout Book purportedly indicated that Lara was associated with M–19, a Colombian terrorist organization and also linked Lara to the Cuban intelligence service.

Lara contended that she has never been a member of the Communist Party or of any guerilla movement, and that she has never planned upon entry into the United States to engage in activities which the laws of the United States would prohibit or to engage in activity subversive to national security.[1] She claimed that she was excluded because she has written articles critical of the Reagan Administration's policy in Central America.

Lara was detained by INS agents and held for a period of six days, including three days in administrative segregation at a maximum security facility. State subsequently revoked Lara's visa and the INS excluded Lara from the United States without a hearing, pursuant to 8 U.S.C. §§ 1182(a)(26), (27) and (28).[2] At the time

---

1. *See* Lara Aff. dated October 15, 1986.

2. These provisions provide, in relevant part, that the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

 (27) Aliens who the consular officer or the Attorney General knows or has reason to believe seek to enter the United States solely, principally, or incidentally to engage in activities which would be prejudicial to the public interest, or endanger the welfare, safety, or security of the United States;

 (28) Aliens who are, or at any time have been, members of any of the following classes:

 (A) Aliens who are anarchists;

 (B) Aliens who advocate or teach, or who are members of any organization that advocates or teaches, opposition to all organized government;

 (C) Aliens who are members or affiliated with (i) the Communist Party of the United States, (ii) any other totalitarian party of the United States ... [or any section, branch subsidiary or subdivision of the Communist Party];

 (D) Aliens not within any of the other provisions of this paragraph who advocate the economic, international, and governmental doctrines of world communism or the estab-

 lishment in the United States of a totalitarian dictatorship ...

 (F) Aliens who advocate or teach or who are members of organizations that advocates or teaches (i) the overthrow by force, violence, or other unconstitutional means of the Government of the United States or of all forms of law; or (ii) the duty, necessity or propriety of the unlawful assaulting or killing of any officer or officers ... because of his or their official character; or (iii) the unlawful damage, injury, or destruction of property; or (iv) sabotage;

 (G) Aliens who write or publish, or cause to be written or published, or who knowingly circulate, distribute, print, or display, or knowingly cause to be circulated, distributed, printed, published, or displayed, or who knowingly have in their possession for the purpose of circulation, publication, distribution or display, any written or printed matter, advocating or teaching opposition to all organized government, or advocating or teaching [anything listed in subparagraph (F)(i)–(iv) ];

 (H) Aliens who are members of or affiliated with any organization ... [that engages in the behavior described in subparagraph (G) ]

she was denied entry, the INS provided her with an "I–147 form" which stated, without further elaboration, that she is temporarily excluded from admission to the United States under Section 235(c) of the Immigration and Nationality Act.[3] On October 17, 1986, Lara returned to Bogota, Colombia.

On October 23, 1986, Helton, Lara's attorney, sent letters to the INS, the FBI, State, and the CIA, requesting information pursuant to FOIA relating to her exclusion. The requests sought:

(1) Any and all agency records pertaining to Ms. Lara, a Colombian national now living in Bogota, including any and all records considered in connection with her exclusion from the United States in October 1986;

(2) Any and all agency records pertaining to the establishment and maintenance of the Service Lookout System described in the INS Operations Instruction 235.8 and any analogous system used by employees and/or agents of the Department of State in connection with the issuance or revocation of non-immigrant or immigrant visas to aliens;

(3) Any and all agency records pertaining to the procedures for listing and removing names in the systems described in paragraph (2) above, and the bases for such listing, including the names (and the number of names) currently listed and the bases for those listings;

(4) Any and all agency records pertaining to the listing of Patricia Lara's name and the date of such listings in the systems described in paragraph (2) above.

In addition, Helton asked State and the INS to provide:

(5) Any and all agency records that would be relied upon to give figures for 1984, 1985 and 1986 (as well as the figures themselves) relating to agency de-

terminations under sections 212(a)(27), (28) and (29) of the INA.

On November 10, 1986, Assistant Secretary of State Elliot Abrams discussed Lara's exclusion on the nationally televised CBS program, "60 Minutes." *See* Helton Aff., Ex. F. Abrams asserted that Lara was involved in terrorist activities as a member of the M–19 guerilla movement in Columbia.

In response to plaintiffs' FOIA requests, the INS, the FBI, State and the CIA subsequently released several hundred pages of documents in their entirety. More documents were released in redacted form and approximately 80 documents were withheld in their entirety. The Government based the nondisclosure of certain material on FOIA's Exemptions 1, 2, 3, 5, 6, and 7.

Defendants, faced with the unenviable task of retrieving hundreds of documents, have attempted to recite their responses and objections in an organized manner. However, since the agencies have submitted their documents piecemeal, in a wealth of correspondence reflecting numerous revisons in disclosure decisions, the following clarifies and briefly outlines each agency's response and claimed exemptions.

### 1. The FBI Response:

The FBI first released material responsive to Helton's request on May 14, 1987, in which 64 of 94 pertinent pages were released. *See* Am. Complaint, Ex. S. On August 4, 1987, the FBI released seven more pages in part. The FBI cites Exemptions 1, 3 and 7(C), (D), and (E) as justification for withholding information. *See* Hurst Decl.; Mencer Decl.; Thomas Decl. Subsequently, the FBI released 8 pages in their entirety on August 12, 1988. *See* Mencer Supp.Decl.

(I) Any alien who is within any of the classes described in subparagraphs (B)–(H) of this paragraph because of membership in or affiliation with a party or organization ... [with exceptions noted];
(29) Aliens with respect to whom the consular officer or the Attorney General knows or has reasonable ground to believe would, after entry, (A) engage in activities which would be prohibited by the laws of the United States

relating to espionage, sabotage, public disorder, or in any other activity subversive to national security, (B) engage in any activity a purpose of which is the opposition to, or the control or overthrow of, the Government of the United States, by force, violence, or other unconstitutional means ...

**3.** Lara Aff. ¶ 11.

In addition, the INS referred twelve pages of documents to the FBI. *See* Am. Complaint, Ex. I. The plaintiffs assert that they have not received any response from the FBI regarding these documents to date.

### 2. The CIA Response:

The CIA informed Helton on February 19, 1987 that no records relating to the plaintiffs' request were within its possession. *See* Second Am. Complaint, Ex. CC. Yet plaintiffs assert that the FBI referred 27 documents to the CIA for review. The CIA now concedes that it reviewed 27 documents received from the FBI and asserts that it released three in full and four in part. The remaining 20 were withheld in their entirety. The exemptions cited as justification for the withheld portions of material are 1 and 3. *See* Carle Decl.

The CIA states that the agency inadvertently failed to search the records of the Directorate of Intelligence. The CIA subsequently searched these records and discovered 52 documents relating to Helton's request. Of these documents the CIA referred 25 to State and one to the Defense Intelligence Agency and one to the United States Information Agency. Of the remaining 24 CIA originated documents, the agency released seven in part and withheld seventeen in their entirety. The CIA cited Exemptions 1 and 3. *See* Carle Supp. Decl.

### 3. The State Department's Response:

The State Department divided its responses into three separate files, each corresponding to specific requests by Helton.

*(a) FOIA Case Number 8604234:* The material in this file responds to request (1). On June 9, 1987, State released 33 documents in full, twenty in part, and 40 in their entirety. In addition, State referred three documents to other agencies. *See* Lindstrom Decl., Ex. B.

On June 9, 1987, the Central Foreign Policy Records Office released nine documents in full, four in part, and 32 in their entirety. *See* Lindstrom Decl., Ex. C. Subsequently, State released three documents in their entirety that were initially denied in part, and two documents in part that were initially denied in full. *See* Lindstrom Decl., Ex. D.

A subsequent search of State's records at the Bureau of Consular Affairs uncovered additional pertinent documents. Initially State withheld all documents. *See* Lindstrom Decl., Ex. E. After a review of the material, however, fifteen documents were released in full and three were released in part. *See* Lindstrom Decl., Ex. F.

*(b) FOIA Case Number 8604723:* The material in this file responds to requests (2), (3) and (4). On June 3, 1987 State informed Helton that it had discovered one document relating to request (2) which was being withheld in full. *See* Lindstrom Decl., Ex. G. On June 11, 1987, State released the one relevant document it had discovered pertaining to requests (3) and (4).

*(c) FOIA Case Number 8604724:* The material in this file responded to request (5). State informed Helton on June 11, 1987, that it had discovered three relevant documents of which all were released in full. In addition, of eight documents referred to State by the FBI, State released one in full and withheld the remaining seven in their entirety.

To summarize State's response for all five requests, it released 64 documents in full, 28 in part and withheld 79 in their entirety. State cites Exemptions 1, 3, 5 and 6 for all the information not disclosed. *See* Lindstrom Decl.

Recently, due to the public attention surrounding the Lara matter, State undertook additional searches of the United States Embassies in Paris and Bogota. On March 3, 1988 State released in full thirteen documents discovered in Bogota, as well as four others in part. State withheld two more documents pending review by other agencies. The information withheld from the United States Embassy in Bogota was denied pursuant to Exemptions 1 and 6. *See* Smith Decl.

### 4. The INS Response:

The Central Office of the INS responded to requests (1) and (4), concerning material

not specifically related to Lara. By letter dated February 25, 1987, *see* Am. Complaint, Ex. M., the office released pertinent information relating to the NAILS Service Lookout Book. Of this material, ten pages were withheld in their entirety based on FOIA Exemptions 2, 7(C) and 7(E). *See* Neary Aff.

The Eastern Regional Office of the INS responded to requests (2), (3) and (5), concerning material relating specifically to Lara. By letter on January 20, 1987, the Regional Office released information, withholding portions of six pages and denying four more pages in their entirety based on Exemptions 2, 5, 6 and 7(A). *See* Kleinfield Aff.

The INS later withheld in its entirety a single document that had been referred to the INS by State. The INS based its decision to withhold the information on Exemptions 1, 3, and 5. *See* Kleinfield Supp. Aff.

In addition, on February 17, 1987, Helton requested that the New York District Office of the INS provide records pertaining to the detention of Lara at the Service Processing Center of the Bureau of Prison's Metropolitan Correctional Center in New York City. In response, the District Office released some pertinent records while informing Helton that two documents had been referred to the Bureau of Prisons for its review. To date, plaintiffs have not received any communications regarding these two documents to date. *See* Vignola Decl. ¶ 14.

Finally, an INS employee discovered eighteen single-page documents responsive to Helton's initial request in a workfolder at JFK. These documents were never transferred to the main INS administrative file on Lara and therefore were not included in the INS's initial response. Of the eighteen pages discovered, four were released with redactions and one was withheld in its entirety. The INS based its decision to withhold material on Exemptions 2 and 7(A) and 7(C). *See* Gantner Aff.

## B. The Present Action

On May 26, 1987, plaintiffs initiated this action requesting an order enjoining defen-dants from withholding all records improperly withheld and ordering immediate disclosure of those records to plaintiffs. The Government filed a motion for summary judgment and subsequently, pursuant to a Stipulation and Order approved by this Court on June 8, 1987, submitted its *Vaughn* affidavits in support of its motion. Plaintiffs also moved for partial summary judgment with respect to certain documents which they believe are not covered by the exemptions. With respect to the remaining documents, plaintiffs moved for more definitive *Vaughn* affidavits and discovery pursuant to Fed.R.Civ.P. 56(f) and, in the alternative, for *in camera* review.

On an exemption by exemption basis, the plaintiffs summarized the alleged shortcomings of the *Vaughn* indexes as follows:

1. The records exempted under § 552(b)(1) contain no logical nexus between the withheld information and the harm to national security;

2. The records exempted under § 552(b)(2) lack any independent showing that the documents would enable individuals to circumvent compliance with the law;

3. The records exempted under § 552(b)(3) lack any relationship to the information meant to be exempted within the relevant statute cited;

4. The records exempted under § 552(b)(5) lack any independent showing of the deliberative, consultative, decision-making process between agencies;

5. The records exempted under § 552(b)(6) lack a description of the nature of the unwarranted invasion of privacy and disregard the public interest involved which outweighs any such invasion;

6. The records exempted under § 552(b)(7)(A) do not show any particular enforcement proceedings that would be interfered with; those exempted under sub-section (C) fail to show an invasion of privacy; those exempted under sub-section (D) fail to show that the information came solely from a confidential source and offer only a conclusory showing that

the sources were confidential; those exempted under (E) fail to show that an investigative technique is involved or that the disclosure of information would risk circumvention of the law.

In addition to the Government's alleged failure to address the exemptions properly, plaintiffs further assert that the Government fails to disclose any reasonably segregable portion of the documents and failed to demonstrate the adequacy of its searches.

On January 31, 1989, the Court heard oral argument on defendants' and plaintiffs' motions for summary judgment. The Court determined that the Government had failed to demonstrate adequately which documents were exempted and the reasons for such exemptions. The Court then granted the Government the opportunity to submit more specific *Vaughn* affidavits before determining whether or not to uphold the Government's claimed exemptions or to proceed with *in camera* review. The Court did not address the sufficiency of the affidavits individually, but rather recommended that the Government reconsider all of its submissions in light of the Court's determination. The Government subsequently supplemented only the FBI affidavit which had been singled out by the Court at the January argument as patently inadequate.[4]

The Government now contends that the Court should uphold the claimed exemptions because the agencies' *Vaughn* affidavits adequately establish the propriety of their FOIA determinations by detailing the nature of the claimed exemptions and their applicability to the withheld material. Al-

ternatively, the Government suggests that the Court may wish to review *in camera* particular documents or the agencies' position in general.

Plaintiffs continue to point to what they describe as two general problems with the Government's *Vaughn* affidavits. First, plaintiffs assert that the Government fails adequately to describe the context or substantive content of the withheld. Second, plaintiffs assert that the Government fails to make anything but a conclusory showing of the applicability of each of the claimed exemptions. As a result, plaintiffs conclude that the Government's summary judgment motion is premature since it would require the Court to affirm the defendants' exemption claims without conducting a *de novo* review, in violation of specific FOIA provisions.[5]

## II. DISCUSSION

### A. The FOIA and Its Exemptions

Congress enacted FOIA in order "to open agency action to the light of public scrutiny." *United States Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. ——, ——, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989), *quoting Department of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). As the Supreme Court recently explained:

> Congress did so by requiring agencies to adhere to " 'a general philosophy of full agency disclosure.' " ... Congress believed that this philosophy, put into practice, would help "ensure an informed citi-

---

**4.** The Government contends that "[w]ith regard to the remaining agency *Vaughn* affidavits, the Government's review has confirmed the Court's tentative conclusion at the January 31 argument: all other agency affidavits comply with the dictates of Second Circuit caselaw." Letter from Government to Court dated March 31, 1989. Unfortunately, the Government optimistically misreads the transcript of the January 31 argument. While I played devil's advocate with both sides, I emphasized both at the outset and throughout that I had not made any definitive conclusions (Tr. 1, 19, 24) and, in fact, expressed concern as to the sufficiency of all affidavits. *See* Tr. 15 ("I don't think that the mere recitation of the hazards of disclosure

generally and the general purposes behind these exemptions and the kinds of evil that the exemptions are designed to meet, coupled with a statement that the document in question fits within a particular exemption, does the trick. There has to be detail, sufficient detail concerning the document itself to warrant its application.")

**5.** Plaintiffs had attempted to narrow the issues by serving interrogatories on the defendants; however, the government refused to answer interrogatories, claiming that plaintiffs were not *per se* entitled to discovery prior to a Government motion for summary judgment.

zenry, vital to the functioning of a democratic society."

*U.S. Dept. of Justice v. Tax Analysts,* —— U.S. ——, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112 (1989) (citations omitted).

In service with these goals, FOIA provides that federal agencies in possession of records and related materials must make them available to the general public upon request unless the material falls within one of FOIA's nine statutory exemptions. 5 U.S.C. § 552(b)(2)–(9). These exemptions are intended to be narrowly construed to ensure that Government agencies do not develop a rubber stamp, "top secret" mentality behind which they can shield legitimately disclosable documents. *Sharyland Water Supply Corp. v. Block,* 755 F.2d 397 (5th Cir.1985), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 697 (1985); *New England Apple Council v. Donovan,* 725 F.2d 139 (1st Cir.1984); *Conoco Inc. v. United States Department of Justice,* 687 F.2d 724 (3d Cir.1982).

■ District courts are to review *de novo* all exemption claims advanced and, if necessary, examine records *in camera* to determine whether such records, or any part thereof, should be withheld under the exemption set forth by the agency. 5 U.S.C. 552(a)(4)(B); *King v. United States Department of Justice,* 830 F.2d 210 (D.C. Cir.1987); *Donovan v. F.B.I.,* 806 F.2d 55, 58 (2nd Cir.1986). In keeping with the philosophy of broad disclosure, the agencies bear the burden of justifying their decision to withhold requested information. *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 352, 99 S.Ct. 2800, 2808, 61 L.Ed.2d 587 (1979).[6]

■ An agency may meet its burden of proof by filing affidavits, termed *Vaughn* affidavits, describing the material withheld and the manner in which it falls within the exemption claimed. *Vaughn,* 484 F.2d at 827. "The significance of agency affidavits in a FOIA case cannot be underestimated." *King,* 830 F.2d at 218. As the D.C. Circuit Court observed in *Vaughn,*

"[the] lack of knowledge by the party seeing [sic] disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." 484 F.2d at 823–24. The submitted *Vaughn* affidavits must therefore enable "the District Court to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves." *Dellums v. Powell,* 642 F.2d 1351, 1360 (D.C.Cir.1980).

■ As Judge Sweet of this district has noted, the necessary elements for determining the adequacy of a sufficient *Vaughn* index are:

(1) The index should be contained in one document;

(2) the index must adequately describe each deletion; and

(3) the index must state the exemption claimed for each deletion and explain why the exemption is applicable to that deletion.

*Donovan v. FBI,* 625 F.Supp. 808, 810 (S.D. N.Y.1986), *quoting, Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C. Cir.1979). Specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague and sweeping." *King,* 830 F.2d at 219 (citations omitted).

■ For each withheld portion, the agency must discuss the consequences of disclosing the sought-after information, *King,* 830 F.2d at 224, show that the information withheld is not reasonably segregable, *Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242 at 260 (D.C.Cir.1977), and demonstrate that it has thoroughly searched for the requested documents. Accordingly, the Government's *Vaughn* affidavits must explain in detail the scope and method of the search conducted by the agency. *Perry v. Block,* 684 F.2d 121 (D.C.Cir.1982). A search that is "reasonably calculated to

---

**6.** *See* S.Rep. No. 813, 89th Cong., 2nd Sess., 8 (1965) ("Placing the burden of proof upon the agency puts the task of justifying the withhold- ing on the only party able to explain it"); H.R. Rep. No. 1497, 89th Cong., 2d Sess., 9 (1966), U.S.Code Cong. & Admin. News 1966, 2418.

uncover all relevant documents" will satisfy the Government's burden in this regard. *Miller v. United States Department of State*, 779 F.2d 1378 (8th Cir.1985).

Summary judgment is appropriate in a FOIA case, as in all other federal litigation, only if the moving party proves that no substantial material facts are in dispute and that the movant is entitled to judgment as a matter of law. To meet this standard in a FOIA suit, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's inspection requirements." *Perry* at 126. Furthermore, summary judgment is warranted only if the affidavits are uncontroverted by evidence in the record or by evidence of agency bad faith. *Military Audit Project v. Casey*, 656 F.2d 724 (D.C.Cir.1981).

### B. The Exemptions

In the present action, the Government has claimed six of the nine exemptions available under the FOIA:

*Exemption 1*

Exemption 1 protects against disclosure of matters that are

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C. 552(b)(1). Documents are properly withheld from disclosure under this exemption if "the President has determined by Executive Order that particular documents are to be kept secret." *EPA v. Mink*, 410 U.S. 73, 82, 93 S.Ct. 827, 833, 35 L.Ed.2d 119 (1973). Therefore, the Government shoulders the burden of showing that (1) the information was classified following proper classification procedures and (2) by its description, the document was properly classified within the claimed exemption. *Hayden v. National Security Agency/Central Security Service*, 608 F.2d 1381, 1387 (D.C.Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2156, 64 L.Ed.2d 790 (1980).

Courts must accord "substantial deference" to agency affidavits that implicate national security. *Donovan*, 806 F.2d at 60; *Doherty v. Department of Justice*, 775 F.2d 49, 52 (2d Cir.1985); *Diamond v. FBI*, 707 F.2d 75, 79 (2d Cir.1983), *cert. denied*, 465 U.S. 1004, 104 S.Ct. 995, 79 L.Ed.2d 228 (1984). Such deference, however, by no means gives an agency carte blanche to redact or otherwise withhold responsive information without a valid and thorough affidavit which "describe[s] the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemptions' purpose." *King*, 830 F.2d at 224. Despite the deference due to an agency's determination, the burden remains on the agency to justify its nondisclosure. *Donovan*, 806 F.2d at 60. Courts may refuse to grant summary judgment in favor of the Government with respect to certain withheld information alleged to be protected by Exemption 1 when the Government's affidavits are insufficiently detailed. *See, e.g., Lamont v. Department of Justice*, 475 F.Supp. 761, 771 (S.D.N.Y.1979) (Weinfeld, J.).

In the present action, the Government bases its Exemption 1 claims on Executive Order 12356 § 1.3 which authorizes the classification of information, the unauthorized disclosure of which "reasonably could be expected to cause damage to the national security." Executive Order 12356 § 1.1(a)(3). The relevant specific categories of classified information protected by this Executive Order are: (1) foreign government information sources and exchanges, (2) United States foreign affairs or activities, (3) American intelligence methodology and results, (4) confidential third-party intelligence sources, and (5) miscellaneous identification information which would disclose one or more of the other four categories. *See* Executive Order 12356 § 1.3.

*Exemption 2*

Exemption 2 protects records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. 552(b)(2). These internal rules and practices include

internal matters of a trivial nature and more substantial internal matters, the disclosure of which would allow the circumvention of a statute or an agency regulation. *See Founding Church of Scientology v. Smith,* 721 F.2d 828, 829–830 (D.C. Cir.1983); *Crooker v. Bureau of Alcohol, Tobacco, and Firearms,* 670 F.2d 1051 (D.C.Cir.1981) (en banc).

*Exemption 3*

Exemption 3 provides for the nondisclosure of documents:

> specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3). In order to determine the propriety of the Government's refusal to release documents, the court must consider whether the claimed statute qualifies as a withholding statute under Exemption 3 and whether the material requested is specifically exempted from disclosure. *Medina–Hincapie v. Department of State,* 700 F.2d 737, 740 (D.C.Cir.1983).

In the present action, the Government has claimed exemptions under several statutes. The CIA claims exemptions pursuant to 50 U.S.C. § 431(a) which protects CIA operational files, if exempted by the Director of Central Intelligence, from disclosure under the FOIA. The CIA also claims exemptions pursuant to 50 U.S.C. § 403(d)(3) preventing the disclosure of intelligence sources and methods and 50 U.S.C. § 403g preventing the disclosure of "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 403g. Finally, State claims exemptions pursuant to the Immigration and Nationality Act § 222(f), which prevents the disclosure of information regarding the issuance or refusal of visas or permits to enter the United States.

*Exemption 5*

Exemption 5 permits the nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552(b)(5). First, the Government claims exemptions under the executive or deliberative process privilege. "There is embodied in 552(b)(5) the privilege customarily enjoyed by the Government in its litigations, against having to reveal those internal working papers in which opinions are expressed and policies formulated and recommended." *International Paper Co. v. Federal Power Commission,* 438 F.2d 1349, 1358 (2d Cir.1971), *cert. denied,* 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 (1971), *citing, Ackerly v. Ley,* 420 F.2d 1336 (D.C. Cir.1969). This exemption protects the important policies of "encouraging full and candid intra-agency discussion and shielding from disclosure the mental processes of executive and administrative officers." *Id.* (citations omitted).

Second, the Government claims exemptions under the attorney-client privilege. Exemption 5 protects the working papers of agency attorneys and documents which would come within the attorney-client privilege as applied to private parties. *NLRB v. Sears, Roebuck, & Co.,* 421 U.S. 132, 154, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975).

Finally, the Government claims exemptions under the attorney work-product privilege. The attorney work-product privilege protects documents and other memoranda prepared by an attorney in contemplation of litigation. Fed.R.Civ.P. 26(b)(3); *Hickman v. Taylor,* 329 U.S. 495, 509–510, 67 S.Ct. 385, 392–93, 91 L.Ed. 451 (1947). Therefore, memoranda, such as those advising an agency of "the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency and the likely outcome" are FOIA exempt. *See Delaney, Migdail & Young, Chartered v. IRS,* 826 F.2d 124, 127 (D.C.Cir.1987).

## Exemption 6

Exemption 6 protects agencies' decision to withhold materials the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). The Court must make a two-step determination when evaluating the propriety of such an exemption: "whether the information sought is to be found in personnel, medical, or similar files, and if so, whether its release would constitute a clearly unwarranted invasion of personal privacy." *Arieff v. U.S. Dept. of NAVY,* 712 F.2d 1462, 1466 (D.C.Cir.1983). "Similar files" implicates files having a privacy value similar to those of medical or personnel files. *See Dept. of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

Because FOIA strongly favors disclosure, the Court must balance individual privacy interests against the public's interest in obtaining the information in question. The invocation of Exemption 6 requires "threats to privacy interests more palpable than mere possibilities, *Id.* at 380 n. 19, 96 S.Ct. at 1608 n. 19, and [allows courts to] discount the probability of invasion of privacy in light of attendant circumstances." *Arieff,* 712 F.2d at 1467. Thus, Exemption 6 does not protect information regarding professional relationships or materials associating a person with an agency's business. *Stern v. Small Business Administration,* 516 F.Supp. 145, 147 (D.D.C.1980).

## Exemption 7

Exemption 7 excludes from disclosure law enforcement records which fall within six specific subcategories. 5 U.S.C. § 552(b)(7). The relevant categories are:

law enforcement records or information which (A) could reasonably be expected to interfere with enforcement proceedings ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy (D) could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or authority in any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, and (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. 552(b)(7).

In order to prevail on an Exemption 7 claim, the Government first must demonstrate that the information sought was " 'compiled for law enforcement purposes' " and then must " 'identify a particular individual or a particular incident as the object of its investigation' " and show " 'the connection between the individual or incident and a possible security risk of violation of federal law.' " *Shaw v. FBI,* 749 F.2d 58, 63 (D.C.Cir.1984), *quoting Pratt v. Webster,* 673 F.2d 408, 420–21 (D.C.Cir. 1982). *See also John Doe Corporation v. John Doe Agency,* 850 F.2d 105, 109 (2d Cir.1988).[7]

Material may not be considered exempt merely because it can generally be categorized as an investigatory file compiled for law enforcement purposes. *Lamont* 475 F.Supp. at 776. Rather, to invoke Exemption 7 an agency must "identify a particular individual or a particular incident as the

---

7. In *John Doe,* Judge Winter explained:
 The 1974 amendments to the FOIA make it clear that a governmental entity cannot withhold material requested under the FOIA on the ground that the materials that were not investigatory materials when compiled have since acquired investigatory significance. Originally, the FOIA exemption in question applied to "investigatory files." In 1974, however, Congress substituted the word "records" for "files" to insure that documents produced in the routine course of government operations would not be withheld under subsection (b)(7) merely because they had been commingled with investigative materials generated later in the course of law enforcement proceedings.
 850 F.2d at 109.

object of its investigation and specify the connection between the individual or incident and a possible security risk or violation of federal law. The agency must then demonstrate that this relationship is based on information sufficient to support at least a colorable claim of the connection's rationality." *King*, 830 F.2d at 229 (citations omitted). A court is in no way required to sanction agency claims that strain credulity. However, a court should not "second guess" a law-enforcement agency's showing of investigatory purpose if there has been a plausible basis for the undertaking. *Pratt v. Webster*, 673 F.2d at 420–21.

## C. Examination of Vaughn Affidavits and Relevant Exemptions

Applying the standards set forth above, and upon careful review of the parties' mountainous submissions, the Court finds that defendants' and plaintiffs' motions for summary judgment should be granted in part and denied in part.

### 1. The FBI Affidavits

■ To carry its burden of demonstrating the propriety of the classification decisions supporting its Exemption 1 position, the FBI must describe with reasonable specificity the material withheld, and identify the damage to national security expected to attend its disclosure. The FBI properly claims Exemption 1 in conjunction with its refusal to release documents A1–A35 and documents B, C, D, and 62–39749–4297X. In these documents, the FBI deleted portions depicting such information as the file numbers used to identify specific intelligence activities, the targets of particular intelligence activities of a continued interest to the FBI, designations as to the level and/or focus of investigatory activities, and phrases indicating geographical locations and their assigned numerical designations. As the FBI's affidavits adequately explain, these types of information could disclose protected information regarding "intelligence activities, sources, and methods." The release of the technical or administrative information the FBI wishes to exempt could threaten national

security, as contemplated by Executive Order 123567, by revealing the extent of the FBI's knowledge of a particular investigatory target, allowing the appraisal of the FBI's scope, focus, and levels of investigations, and revealing information regarding the United States' intelligence capabilities. *See Doherty*, 775 F.2d at 51–52.

Although such detailed information alone may not create a sufficient threat to national security, the FBI adequately demonstrates that this information, used together or in conjunction with other information obtained by a foreign intelligence service, could enhance that service's ability to appraise American intelligence activities. "Each individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself." *Halperin v. CIA*, 629 F.2d 144, 150 (D.C.Cir.1980); *Gardels v. CIA*, 689 F.2d 1100, 1106 (D.C.Cir.1982).

■ The FBI also properly claims Exemption 7(C) for portions of documents A1–A35, and documents B, C, D, 62–39749–4297X, 199–2468–5, and 62–80518–354. The FBI deleted FBI agents' initials and names, and support staff's names from these documents allegedly because they are embraced by the personal privacy protection afforded FBI employees under Exemption 7(C). *See Doherty*, 775 F.2d at 52. In conducting a review of Exemption 7(C) claims, the district court must "balanc[e] the privacy interest[s] at stake against the public interest in disclosure." *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 486 (D.C.Cir.1980). *See also Department of Justice v. Reporters Committee for Freedom of the Press*, —— U.S. ——, 109 S.Ct. 1468, 1476, 103 L.Ed.2d 774 (1989). While "[a]s to the other exemptions, 'Congress has struck the balance and the duty of the court is limited to finding whether the material is within the defined category' ...[,] Exemption 7(C)'s balance is not similarly 'tilted emphatically in favor of disclosure.'" *King*, 830 F.2d at 233, *citing Senate of the Commonwealth of Puerto*

*Rico v. United States Dep't of Justice*, 823 F.2d 574, 587 (D.C.Cir.1987) (*quoting Lesar*, 636 F.2d at 486 n. 80). "Whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' *Department of the Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976), rather than on the particular purpose for which the document is requested." *Reporters Committee*, 109 S.Ct. at 1481.

The privacy interest implicated here is the interest "in avoiding disclosure of personal matters." *See Whalen v. Roe*, 429 U.S. 589, 598–600, 97 S.Ct. 869, 875–877, 51 L.Ed.2d 64 (1977).[8] This is exactly the sort of "personal privacy" interest that Congress intended Exemption 7(C) to protect. *Reporters Committee*, 109 S.Ct. at 1476.[9] Public identification of FBI agents could subject them to embarrassment and harassment in both their official duties and in their private lives. *See Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978). Law enforcement personnel have a particularly strong interest in maintaining their privacy in the present action due to the divided public opinion and heightened interest in the Lara case. *See King*, 830 F.2d at 234. The public's interest in obtaining this information does not outweigh the privacy interests implicated because knowledge of the identities of FBI agents sheds little light on the Government's decision to exclude Lara from the United States and, indeed, might impair future investigations. *See Miller v. Bell*, 661 F.2d 623, 631 (7th Cir.1981). In other words, the requested information's relationship to the "basic pur-

pose" of FOIA is tenuous at best. *Reporters Committee*, 109 S.Ct. at 1481.

The third parties identified in the documents have an even greater privacy interest here. "It is generally recognized that the mention of an individual's name in a law enforcement file will engender comment and speculation and carry a stigmatizing connotation." *Branch v. FBI*, 658 F.Supp. 204, 209 (D.D.C.1987). Therefore, the revelation that the third parties, whose names the FBI deleted, had been the subjects of FBI investigations would constitute an invasion of their personal privacy. *See Antonelli v. FBI*, 721 F.2d 615, 618 (7th Cir.1983). This privacy interest outweighs the minimal public interest which would be served by releasing the third parties' names. *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir.1977).

Conversely, the FBI fails to demonstrate adequately the necessity of its 7(D) exemptions for documents A–2, A–3, A–4, A–5, A–6, A–8, A–10, A–11, A–12, A–19, and B. As the FBI claims in its affidavits, this exemption generally extends to the protection of the identity of informers and information they reported which might disclose their identities. *See United Technologies, Corp. v. NLRB*, 777 F.2d 90, 95 (2d Cir.1985); Cong.Rep. No. 1200, 93d Cong., 2d Sess. 13, *reprinted in*, 1974 U.S.Code Cong. & Admin. News 6267, 6285, 6291. "This Circuit has recognized the 'practical difficulty—if not impossibility—of justifying each use of a confidential source exemption by way of an affidavit on personal knowledge.'" *Donovan*, 806 F.2d at 61, *citing Diamond v. FBI*, 707 F.2d at 78. However, the FBI still has the duty to demonstrate the risk to the individual such a revelation could create. Boilerplate de-

8. *See* Warren & Brandeis, "The Right to Privacy," 4 Harv.L.Rev. 193, 198 (1890–1891) ("The common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others....")

9. As the Supreme Court noted in *Reporters Committee:* "The question of the statutory meaning of privacy under FOIA is, of course, not the same as the question whether a tort action might lie for invasion of privacy or the question

of whether an individual's interest in privacy is protected by the Constitution." 109 S.Ct. at 1476, *citing Cox Broadcasting v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (Constitution forbids State from penalizing publication of name of deceased rape victim obtained from public records); *Paul v. Davis*, 424 U.S. 693, 712–714, 96 S.Ct. 1155, 1165–1167, 47 L.Ed.2d 405 (1976) (no constitutional privacy right affected by publication of name of arrested but untried shoplifter).

scriptions such as, "confidential information from a confidential source," *see e.g.* Mencer Aff. at 24, do not sufficiently demonstrate that confidential information would invariably identify an informant. The Government's description of the withheld documents are "conclusory" and "factually inadequate." *Lamont,* 475 F.Supp. at 771.

■ Since the FBI's explanations for its 7(D) Exemptions are deficient, the Court orders the FBI to submit these documents for *in camera* review. While Courts hearing FOIA claims are not obligated to conduct *in camera* review, they may exercise their discretion to do so. H.R.Rep. No. 1380, 93d Cong., 2d Sess. 8 (1974); *see also NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224, 98 S.Ct. 2311, 2318, 57 L.Ed.2d 159; *Navasky v. CIA,* 499 F.Supp. 269, 272 (S.D.N.Y.1980). *In camera* review should not be used as a substitute for the Government's obligation to provide detailed public affidavits. *Lykins v. United States Department of Justice,* 725 F.2d 1455 (D.C.Cir.1984). However, courts may order such an inspection "on the basis of an uneasiness, on a doubt [they] want satisfied before [they] take responsibility for a *de novo* determination." *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C.Cir.1978).[10] As in the action presently before this Court, *in camera* review is necessary when the validity of the government assertion of exemptions cannot realistically be evaluated without information other than that contained in the affidavits, and discovery would compromise the secrecy asserted. *Arieff v. United States Department of the Navy,* 712 F.2d 1462 (D.C.Cir.1983).[11]

In this case, the FBI's failure to comply with the Court's request for more substantial and informative *Vaughn* affidavits leaves the Court no realistic alternative other than to review *in camera* the exemptions claimed pursuant to 7(D). The Court cannot determine the validity of the FBI's claims based upon the boiler plate language employed for its Exemption 7(D) claims. Because the FBI has attempted to supplement its *Vaughn* affidavits on several occasions, and in doing so has built a public record, the Court will not order submission of additional *Vaughn* affidavits.

The FBI also does not adequately demonstrate its Exemption 7(E) claim for document 62–39749–429X. The affidavits merely provide a generalized discussion of the exemption without clarifying how it applies to the particular investigatory technique discussed in the document. Thus, this claim also warrants *in camera* review.

■ As to plaintiffs' general challenges to the FBI's production of documents, the Court finds that the FBI's search was adequate. A search for responsive documents need not, and indeed could not, be perfect. An agency's FOIA search need only be reasonably designed to identify and locate responsive documents. *See, e.g., Meeropol v. Meese,* 790 F.2d 942, 952–53 (D.C.Cir. 1986) ("a search is not unreasonable simply because it fails to produce all relevant material; no search of this size ... will be free from error"); *Marrera v. Department of Justice,* 622 F.Supp. 51, 54 (D.D.C.1985) (no requirement that agency search every division or field office; only requirement is "good faith" effort, using methods "rea-

---

**10.** In determining whether to conduct *in camera* inspection, Courts consider the following factors:

(a) judicial economy, (b) the conclusory nature of the agency affidavits, (c) bad faith on the part of the agency, (d) disputes concerning the contents of the documents, (e) whether the agency requests an *in camera* inspection, and (f) the strong public interest in disclosure.

*Donovan,* 806 F.2d at 59, *citing Allen v. CIA,* 636 F.2d 1287, 1291 (D.C.Cir.1980) (overruled on other grounds in *Founding Church of Scientology v. Smith,* 721 F.2d 828 (D.C.Cir.1983).

**11.** In the case of an excessive record, sampling procedures have been held to be "appropriately employed ... [where] it would not realistically be possible to review each and every [document]." *Weisberg v. United States Department of Justice,* 745 F.2d 1476 at 1490 (D.C.Cir.1984). The court generally selects a sample of documents at random. This random method does not call into question the integrity of the sample. *Id.* at 1490. A sampling of one percent of the total documents is considered to be sufficient. *Meeropol v. Meese,* 790 F.2d 942 at 959 (D.C.Cir.1986). Because the number of documents in question are relatively few, the Court need not emply a sampling method here.

sonably expected to produce the information requested"). The FBI Agents' search in this case satisfies the criteria of reasonableness and good faith.[12] Accordingly, this claim is dismissed.[13]

### 2. The CIA Affidavits

■ The CIA withheld documents pursuant to Exemptions 1 and 3.[14] The Court finds that the claimed exemptions properly apply to the names of CIA components within the Directorate of Operations and the names and locations of covert field installations because their discovery could create a threat to national security by permitting foreign intelligence services to appraise, neutralize, or infiltrate their work. As to the remaining documents requested, however, the affidavits plainly are insufficient.

■ The CIA affidavits provide insufficient detail and fail to indicate that records have been "reasonably segregated."[15] For example, the CIA's affidavits do not sufficiently describe the "activities of foreign groups," "foreign policy matters," "details of Lara's activities" or "specific events and political activities" for the Court to uphold the CIA's claims under Exemption 1 and 3. *See* Carle Decl.; Carle Supp. Decl. The CIA repeatedly uses such meaningless phrases to describe the withheld information without clarifying what types of activities, events or policy matters are actually discussed in the documents. Furthermore, the affidavits invariably state that "Lara and other knowledgeable individuals easily could identify the important foreign intelligence source of this information and the intelligence method by which the CIA obtained the information." Just as the FBI's use of boilerplate language in its affidavits does not suffice to establish the importance of applying 7(C) Exemptions, the CIA's use of equally unenlightening phrases does not suffice to demonstrate the need to exempt the activities described. *See, e.g., Lamont,* 475 F.Supp. at 771.

Apparently recognizing that its *Vaughn* affidavits are insufficient, the CIA has prepared a classified *Vaughn* affidavit for *in camera* review. This affidavit allegedly "provides both a summary of the intelligence findings which underpin the agency's withholding and a document-by-document description of the basis for the agency's determinations" and demonstrates that "plaintiffs here seek information regarding an intelligence matter that is by no means closed." Letter to Court dated March 31, 1989. As Judge Winter recently noted in *John Doe, "in camera* review of a *Vaughn* index and interrogatory answers is unusual, and differs substantially from *in camera* review of the actual requested documents, a procedure expressly authorized by the FOIA.... Existing caselaw allowing *in camera* inspection of a *Vaughn* index appears limited to cases implicating national security interests." 850 F.2d at 110, *citing Doyle v. FBI,* 722 F.2d 554, 556–57 (9th Cir.1983); *Hayden v. National Sec. Agency,* 608 F.2d 1381, 1384–85 (D.C. Cir.1979); *Phillippi v. CIA,* 546 F.2d 1009, 1013 (D.C.Cir.1976). The CIA has claimed that disclosure would present a great dan-

---

12. Agent Mencer described the "FBI Central Records System" as containing all pertinent information deemed worthy of retention by the FBI. FBI Mencer Decl. 6 at 3–4. Access to the Central records System is obtained by use of the FBI General Indices which fall into two categories: "main" files of the identified entry and cross references of that entry. *Id.* ¶ 7. The result of the FBI's search for Lara references in both the General Indices categories was a location of a "main" file and six cross-references. Upon review, the Court finds that the search conducted was reasonably designed to identify responsive documents. Other courts have held this FBI search strategy to be reasonable. *See e.g. Freeman v. Department of Justice,* Civil No. 85–0958–A, slip. op. at 6, (E.D.Va. Mar. 12,

1986), *aff'd mem.,* 808 F.2d 834 (4th Cir.1986); *Friedman v. FBI,* 605 F.Supp. 306, 311 (N.D.Ga. 1984).

13. The Court also rejects plaintiffs' general challenges to Agent Thomas' qualifications and investigation procedures. *See* P. Brief at 17–18.

14. The CIA claims Exemptions 1 and 3 for documents: C, A–15—A–20, A–23, A–34, and 1–14.

15. The Government correctly contends that the FOIA requires *reasonable,* not perfect segregation. *See e.g., Doherty,* 775 F.2d at 53. However, the scant CIA affidavits do not indicate that CIA has fulfilled its duty to provide even reasonable segregation.

568

ger to national security in this case. However, the Court is unconvinced that the CIA has provided the most thorough public explanation possible. Recognizing that plaintiffs will be unable to mount a complete adversarial argument without access to the submitted affidavits, the Court will not examine *in camera* affidavits unless it is "absolutely necessary." *Allen v. CIA*, 636 F.2d 1287, 1298 n. 63 (D.C.Cir.1980).

It is in both plaintiffs' and the general public's interest to create as full a public record as possible. While it appears that the FBI has attempted to create a full public record, the CIA's efforts have fallen short. Thus, the CIA shall submit, within two weeks of this opinion, a supplementary affidavit providing a more detailed explanation for its withholdings. The CIA is directed to look to its already prepared classified affidavit and excerpt or summarize relevant portions where to do so would not compromise national security. Plaintiffs shall have two weeks to respond. Subsequently, if necessary, the Court may order either *in camera* review of the classified affidavit, or *in camera* review of the documents themselves.[16] Upon such a review, if the Court determines that the FOIA exemptions do not apply, it shall order the CIA to release in whole or in part either the classified affidavit or the documents themselves.

### 3. The State Department's Affidavits

■ The State Department properly claims Exemption 5 with respect to the agency memorandums and letters which contain information protected by the deliberative process, attorney work product, and attorney-client privileges.[17] The acceptable portions of the relevant affidavits first appear superficial due to their brief

descriptions of individual redactions. However, the affidavits provide more extensive descriptions and explanations following the cursory listing of relevant documents. These subsequent descriptions, particularly the portions categorized as "public affairs" and "possible lawsuit by Lara," adequately describe the contents of the documents listed. For example, the Lindstrom Declaration explains that documents L006, L010, L013, and L023 concerned State's response to an October 20, 1986 letter from Ms. Jane E. Kirtley, Executive Director of The Reporters Committee for Freedom of the Press, and development of language to be used in response to similar inquires." Lindstrom Decl. at 41. The affidavits' explanations as to how these documents would compromise open discussion and the free flow of opinions necessary to the formulation of departmental decisions and policies are equally satisfactory.

■ However, State must release any segregable factual data contained in the pertinent documents. Exemption 5 does not protect "purely factual material appearing in ... documents in a form that is severable without compromising the private remainder of the documents." *EPA v. Mink*, 410 U.S. 73, 91, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973); 5 U.S.C. § 552(b). The Government vaguely contends that disclosure of this material "would impede the candid expression of intra- and inter-agency discussion ..." Gov. Brief at 46. Given the FOIA's predisposition toward disclosure, State's argument for protecting the documents in their entirety is too tenuous to allow withholding of the segregable portions of factual data. *See Doherty v. Dept. of Justice*, 775 F.2d 49, 53 (2d Cir.1985). Since State does not provide a sufficient

**16.** A similar procedure was ordered by Judge J. Skelly Wright in *Phillippi v. CIA*, 546 F.2d 1009 (D.C.Cir.1976). Judge Wright, however, allowed plaintiffs to test the agency's arguments with discovery. While this procedure may be desirable in some circumstances—including *Phillippi*, "a case in which the Agency has refused to confirm or deny the existence of materials requested under the FOIA," 546 F.2d at 1012—the Court finds that it is neither necessary nor desirable here.

**17.** The State Department claims Exemption 5 for documents: A001, A007, I004, I005, I006, A079, A081, F001, F002, F003, 27, 15, 16, 4–13, 19, 23, 25, 27, V069, A071, A083, V041, L003, L006, L010, L013, L023, L056, L061, L104, A076, A003, A009, V033, V024, V028, V032, 28, I002, A004, A005, L038, L055, L081, L087, L088, L089, L090, L093, L094, L095, L108, L109, L111, L115, L118, L119, L121, L001, V002, V005, V029, L024, and L105.

explanation as to why it could not segregate the factual data from the exemptible material, the Court orders State to release such segregable factual data to the public.

 State also improperly withheld portions of documents stating the names of State's officers and staff members under Exemption 6.[18] State explains that "given the controversial nature of this case and the amount of publicity it has generated, disclosure of the names of these individuals would subject them to possible embarrassment or harassment in their social or community relationships, and to personal or professional disadvantage." Lindstrom Decl. at 35. However, the names of State's staff do not constitute information found exclusively in personnel, medical, or similar files, the disclosure of which would invade the staff members' personal privacy. *See Arieff*, 712 F.2d at 1466. Instead, disclosure of their names identifies public officials who were "involved or informed of aspects of the Lara proceeding." Lindstrom Decl. at 17. Disclosure merely establishes State employees' professional relationships or associates these employees with agency business. *See Stern*, 516 F.Supp. at 147. The Government provides no substantial evidence of such security or privacy interests which would contradict the Court's determination that the disclosure of such information is not detrimental and does not outweigh the public's interest and right to obtain such information under the FOIA. Therefore, given FOIA's predisposition toward disclosure, the Court orders State to disclose this redacted material to the public.

 State also withheld documents under several sections of Exemption 1. State properly withheld many documents under Exemption 1.3(a)(3) and 1.3(a)(5) because it

adequately demonstrated the need to maintain the confidentiality of these documents regarding foreign information sources and exchanges and the conduct of foreign affairs and activities.[19] This determination applies even if these documents consist of inter-agency exchanges which discuss foreign sources, exchanges, or activities rather than exchanges between State as the foreign governments themselves. Documents circulated between government offices could contain information originally provided by a foreign government which merits protection. Thus, State rightfully withheld such documents in order to uphold the confidentiality of the original exchanges.

 Nevertheless, the Government must release documents F014 and F021 because these documents already have been released to the public; the Colombian Embassy gave these documents to Lara. *See* Helton Aff. ¶ 11. Similarly, the Government must release the portions of documents 24, I002, and V061 which discuss "off-the-record exchanges with the press ..." Lindstrom Decl. at 45. The release of information to the press, even if it occurs "off-the-record," constitutes a prior release of the relevant information. State would not logically have discussed such information with the press unless it was sure that a "leak" would not breach national security. Thus, State's refusal to release these documents on the grounds that it could breach national security is undercut by its own prior actions.

State must submit the remaining documents exempted under 1.3(a)(4) and 1.3(a)(9) to the Court for *in camera* review.[20] The affidavits' conclusory statements, such as "[it would] reveal sensitive

---

18. Exemption 6 has been claimed to withhold portions of documents: A057, A066, A067, A068, A069, A072, A074, A078, A080, L004, L022, L041, V009, V013, V048, V077, A083, L002, L003, L006, L010, L023, A076, A009, V024, V027, V028, V032, L001, L092, L105, B011, B013, B030, and B038.

19. The State Department claims Exemption 1.3(a)(3) and 1.3(a)(5) for documents: 16, 33, 38, 41, F008, F014, F021, F029, F040, A064,

V064, A001, A006, A007, A008, A079, I081, I004, I006, 15, 16, F001, F002, F003, 27, 5, 7–13, 23, 24, 25, 28, I002, V061, V074, 36, V005, V029, and B011.

20. The State Department claims Exemptions 1.3(a)(4) and 1.3(a)(9) for documents: A001, A006, A007, A008, A079, A081, A004, I005, I006, 15, 16, F001, F002, F003, 27, I002, V061, B011, 24, and 28.

sources," Lindstrom Decl. at 22, and accompanying vague arguments for protecting intelligence and confidential sources do not provide enough specificity to determine whether to release the information in question. *See King*, 830 F.2d at 221 n. 90.

■ Similarly, State does not sufficiently describe the documents or explain its reasoning to support the withholding of documents under Exemption 3.[21] State supports its refusal to release all documents mentioning Lara's visas by employing such blanket descriptions as ". . . information and recommendations . . . concerning the visa case and Lara," Lindstrom Aff. at 24, and "information . . . concerning the issuance or denial of U.S. visas." Lindstrom Aff. at 49. Although State correctly argues that the Court's determination whether or not the statute protects the pertinent information should not be based upon the date of the document's creation, State does not sufficiently demonstrate that substantive visa information, which is protected by the statute, appears in the noted documents. Without this showing, the Court cannot determine whether or not State rightfully withheld these portions of the documents. Therefore, since the Immigration and Nationality Act does protect substantive visa information from disclosure, the Court must assess the propriety of State's Exemption 3 claims *in camera* to assure that the protected information is not improperly released.

Finally, while admittedly a close question, the Court also finds that material issues of fact remain as to the adequacy of State's search and, thus, declines at present to grant summary judgment on that issue without prejudice to renewal of the motion upon a more complete record. Within two weeks of this opinion, State may submit further affidavits detailing the adequacy of its search and responding directly to the concerns raised in plaintiffs' detailed memoranda. Plaintiffs shall have two weeks to apply.

*4. The INS Affidavits*

■ With the exception of the documents discussed below, the Court must review *in camera* the documents for which the INS claimed exemptions. The affidavits' descriptions of the documents and their association with the claimed exemptions are so vague that the Court cannot adequately assess the propriety of the INS' claims. Descriptions such as "a computer printout relating to Lara" and explanations of potential harms which merely quote the language of the claimed exemption do not suffice for the purposes of a FOIA assessment. Because the exceptions claimed potentially present a valid reason for withholding the relevant documents, the Court will proceed with an *in camera* review rather than immediately releasing these documents to the public.[22]

Documents 1, 3, and 8, the unnumbered document discussed in the Kleinfield Supp. Aff., and the Operating Instructions discussed in the Neary Aff. provide the exception to the INS' failure to provide sufficient *Vaughn* affidavits. The affidavits adequately describe the relevant contents of these documents and the reasons, pursuant to an available FOIA exemption, for exclusion. Therefore, the Court upholds the INS' decision to withhold these documents.

■ Plaintiffs also seek "the names currently listed [in the NAILS Lookout Book] and the bases for those listings." The INS claims Exemption 7(C) with respect to this listing, alleging that "there is a reasonable probability that the release of the information compiled for law enforcement purposes would constitute an unwarranted invasion of personal privacy." Gov. Brief at 61. As discussed above, the interest "in avoiding disclosure of personal matters" is exactly the type of privacy interest that Congress intended Exemption 7(C) to protect. *See infra* at 28. Nevertheless, Excemption 7(C), by its terms, permits an

---

**21.** The Department claims Exemption 3 for documents: A006, 15, 16, 22, 27, 4–13, 19, 23, 25, 37, A071, A003, L001, V005, and L024.

**22.** The Court is particularly reluctant to order another round of INS *Vaughn* affidavits since plaintiffs' assertions that the INS has misapplied asserted exemptions finds some support in the record. *See* P. Reply Mem. at 48.

agency to withhold a document only when a revelation "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." (emphasis added). In determining whether an invasion of privacy is unwarranted, a court must engaged in a balancing test, and determine whether disclosure would promote the "basic purpose" of FOIA. *Reporters Committee*, 109 S.Ct. at 1481. In this case, unlike *Reporters Committee*, the public interest in at least limited disclosure is strong.

In *Reporters Committee*, the Supreme Court held that rap sheets accumulated by the FBI with respect to private citizens are exempt under Exemption 7(C). In that case, release of information on criminal convictions of private citizens, no longer of public interest generally and often long-forgotten, would constitute a substantial invasion of citizen's privacy not warranted by the low level of public interest in release of the information. The Court noted that release of the information would "not shed any light on the conduct of any Government agency or official." 109 S.Ct. at 1481. In this case, by contrast, the very purpose of plaintiffs' request is to gain information about the manner in which Government agencies decide to exclude aliens, particularly when ideological grounds are involved. The Court finds that disclosure in this case is likely to shed much light on the conduct of Government agencies.

The public has a great interest in knowing who has been listed in the NAILS Lookout Book on the basis of the "ideological exclusion provisions," 8 U.S.C. § 1182(a)(27)–(29). These grounds for exclusion and the exclusion process itself affect citizens' constitutional rights, including the rights of freedom of speech and association. Disclosure would protect citizens' rights to analyze and challenge the exclusion of individuals or the Government's reasons for excluding individuals. Moreover, individuals listed in the NAILS system are not simply being investigated;

they are the subjects of a final INS decision concerning their admissability to the United States.

Still, the public interest in disclosure must be weighed against the privacy interests of the listed individuals. Their privacy interests here are also quite strong. Disclosure could lead to unwelcome consequences. For example, some individuals could be placed in grave danger in their own countries if it were learned that the American government suspects them of being affiliated with terrorist organizations. In view of these concerns, the Court will not order the INS to identify the listed individuals by name. However, in order to advance plaintiffs' interests while also safeguarding the listed individual's privacy interests, the Court orders the INS to identify all individuals excluded under 8 U.S.C. § 1182(a)(27)–(29) by occupation and country. The INS shall also state the bases for each exemption including, where possible, the exact subsections of the applicable statute.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motion for summary judgment in part and denies it in part. The Court orders defendants to submit the noted documents for *in camera* review in accordance with this order.[23]

SO ORDERED.

---

**23.** The Court notes that the Government has failed to respond to plaintiffs' request for the release of the documents the INS referred to the Bureau of Prisons and the twelve pages of documents the INS referred to the FBI. The Court orders the Government to comply with its obligation by submitting the appropriate *Vaughn* affidavits in response to this request.