Michael DONOVAN, William Ford,
James Kazel and Judy
Keogh, Plaintiffs,

v.

FEDERAL BUREAU OF
INVESTIGATION,
Defendant.

No. 82 Civ. 4766 (RWS).

United States District Court,
S.D. New York.

Jan. 6, 1986.

Paul, Weiss, Rifkind, Wharton & Garrison (Robert S. Smith, Maurice A. Leiter, New York City, of counsel) for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. (Gerald T. Ford, Asst. U.S. Atty., New York City, of counsel) for defendant.

## OPINION

SWEET, District Judge.

Presently before the court as a result of a submission on September 20, 1985 is the motion of plaintiffs Michael Donovan, William Ford, James Kazel and Judy Keogh (the "Plaintiffs") for summary judgment and the cross-motion of defendant Federal Bureau of Investigation ("FBI") for similar relief. At issue is the adequacy of the FBI's 70-page affidavit sworn to April 30, 1985, drafted to meet the indexing requirements set out in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) (hereinafter *"Vaughn* affidavit"),

with respect to the agency's documents relating to its investigation of the murder of Jean Donovan and three nuns in El Salvador on December 2, 1980. The Plaintiffs seek summary judgment to require an additional *Vaughn* affidavit. The FBI opposes the motion and also seeks summary judgment dismissing the complaint on the grounds that the withheld documents, or portions of documents, are authorized by the exemptions cited. The Plaintiffs' motion, although well-founded, is denied, and the documents at issue will be withheld or produced as set forth below as a consequence of the court's *in camera* review.

This Freedom of Information Act ("FOIA") request relates to our government's concern and activity with respect to the murder of four American churchwomen in El Salvador in 1980. Files were maintained by the FBI which included material also maintained by the Department of State ("State"), the Department of Justice ("Justice"), the Central Intelligence Agency ("CIA"), the U.S. Customs Service ("Customs"), and the U.S. Marshal's Service ("Marshals"). The request has already been the subject of extensive litigation chronicled below. In addition, events have overtaken the request in some regards, because a distinguished former member of this court, the Honorable Harold R. Tyler, Jr., conducted an investigation and rendered a report to the Secretary of State, *The Churchwomen Murders: A Report to the Secretary of State* and on May 25, 1984 five former Salvadoran guardsmen were convicted of the murder. Notwithstanding these and other events, a glance at the daily headlines and a reflection upon the anguish of the Plaintiffs establish that issues here presented possess great sensitivity and significance. In view of these special circumstances, the time has come to resolve these issues with a final disposition although in another case and at another time it would be appropriate to require an additional *Vaughn* index.

**Prior Proceedings**

The Plaintiffs served their first FOIA request on the FBI on March 11, 1982, and served a follow-up request on January 4, 1983. The FBI initially asserted that all documents in its ten volume, 2912 page file were exempt from disclosure under FOIA exemption 7(A) which protects investigatory records compiled for law enforcement purposes, the release of which would "interfere with enforcement proceedings."

On February 8, 1984, this court, reconsidering its prior order of August 12, 1983 granting the Plaintiffs' partial summary judgment, held that exemption 7(A) protected all but 162 of the documents in the FBI's file. Nonetheless, this court held that the assertion of a blanket exemption for the entire file was inappropriate and that a *Vaughn* affidavit should have been prepared. *Donovan v. FBI*, 579 F.Supp. 1111, 1125–26 (S.D.N.Y.1983). Both sides appealed this court's ruling to the Court of Appeals.

While appeals were pending, five Salvadoran National Guardsmen were convicted in El Salvador of the churchwomen's murders. Shortly thereafter, the FBI informed the Court of Appeals and the Plaintiffs that it would no longer assert exemption 7(A) with respect to the churchwomen's file, and would re-process the ten volume file, asserting at that time any other FOIA exemptions it deemed applicable. The FBI completed its processing of documents on December 6, 1984.

The release of the ten volumes to the Plaintiffs was completed on December 6, 1984. By letter dated February 8, 1985 the Plaintiffs requested defendant to prepare a *Vaughn* affidavit for all 34 documents that were withheld in their entirety, some 72 FBI documents that were withheld in part, 58 State Department documents that were withheld in part, and another 37 documents only if they related to the churchwomen's murder. Accordingly, on May 6, 1985, the FBI produced the Seventh Declaration of D.F. Martell, sworn to April 30, the Declaration of Sherry L. Davis, sworn to the same day, the 186-page Declaration of John Eaves, and the 12-page Declaration of Louis J. Dube, sworn to May 1, 1985. On July 31, 1985, the Plaintiffs filed the in-

stant motion for an order requiring defendant to provide an additional *Vaughn* affidavit, limiting their application to 23 documents.

All documents were numbered sequentially at the time of the initial motions, and the following are now at issue in connection with this motion:

6 11 17A 41 70 83 83A 84 85 86 88 92 92A 108 222 225 227 308 321 470A 643 644 A & B

The FBI's treatment of 644 A & B as two documents will be adopted for the sake of convenience as demonstrated below.

### The Vaughn Affidavit

The *Vaughn* affidavits are collated in the Martell affidavit which has four sections: I: Summary of Administrative and Judicial Proceedings, Paragraphs 6–15; II: Following Trial and Convictions Blanket (b)(7)(A) Exemption No Longer Was Applicable and the Churchwomen File Was Reprocessed, Paragraphs 16–18; III: Explanation of Format Utilized for the Justification of Deleted Material, Paragraphs 19–24; and IV: Justification Categories: Exemptions Asserted: Rationale Descriptions of Deleted Materials—(b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F), Paragraphs 25–107. The documents were attached in deleted form as Exhibit B to the Martell Declaration and were submitted *in camera* in their original form.

The FBI *Vaughn* affidavit thus provides the following information: a listing of the numerical designation of the documents derived from the initial analysis of the file, a list of the exemptions relied upon as cited in the act, a rationale or explanation of each of the cited exemptions and finally copies of the documents at issue with the cited section relied upon added at the deleted portion. The Plaintiffs refer to these designations as "coded symbols." In some of the rationale sections (IV referred to above), certain of the numerically designated documents are referred to, but the affidavit as such does not contain a master listing describing the document at issue, a citation of the exemption relied upon and an explanation of the applicability of the exemption. The explanation of the applicability of the exemption is given in general terms, although in a number of instances the numerical designation of the document is given while in the explanations of other exemptions no particular documents are referred to. Of course, an examination of the document reveals the designation of the exemption relied upon but not the explanation.

■ Both the Plaintiffs and the FBI cite the test for determining the adequacy of a *Vaughn* index that is set forth in *Founding Church of Scientology v. Bell,* 603 F.2d 945, 949 (D.C.Cir.1979). The elements quoted are:

(1) The index should be contained in one document;

(2) The index must *adequately describe each deletion;* and

(3) The index must state the exemption claimed for each deletion and *explain why the exemption is applicable to that deletion.*

These necessary elements have been widely accepted by the circuit courts and by the courts of this district. *Osborn v. I.R.S.,* 754 F.2d 195, 196 (6th Cir.1985); *Davis v. CIA,* 711 F.2d 858, 851 (8th Cir.1983); *Chilivis v. Securities and Exchange Commission,* 673 F.2d 1205, 1208 n. 9 (11th Cir. 1982); *Holy Spirit Assn. v. U.S. Dept. of State,* 526 F.Supp. 1022, 1025 (S.D.N.Y. 1981).

The Plaintiff's launch two attacks on the adequacy of the Martell affidavit. The first is one of form, claiming that the affidavit fails to put the required elements in one place. The second attack claims that the explanations given are conclusory and not related with sufficient specificity to a particular document.

The court in *Powell v. United States Department of Justice,* 584 F.Supp. 1508 (N.D.Cal.1984) found an FBI affidavit strikingly similar to the one at issue here inadequate. It described that affidavit as follows:

In fact, the FBI has presented no index at all. Instead, it has placed code symbols next to each deletion in the documents. These symbols correspond to a table which describes a category of information into which the deletion falls, and the affidavits of the Special Agents then supply generalized discussions of why a particular category of information is exempt. It appears that these discussions are broad enough to apply to any FOIA request, and they are in no way tied to the content of the specific deletions.

*Id.* at 1513–14.

Similarly, in *Thorstad v. CIA*, 494 F.Supp. 500 (S.D.N.Y.1979), the Court found *Vaughn* affidavits insufficient where they failed to describe adequately the reason why the withheld information properly falls within the exemption. As the court noted with respect to one affidavit at issue:

> In a rather extreme example of the shortcomings of defendant's affidavits, the Conley affidavit devotes five pages to describing how the enclosure was classified and how its disclosure could affect national security, but without the slightest attempt to describe sufficiently the information contained in the document.

*Id.* at 503.

 Presumably the form adopted by the FBI is the product of its experience and the exigencies of the demands placed upon the agency. However, the connective tissue between the document, the deletion or its description, the exemption and the explanation is missing, and in a number of instances the explanation is of such generality as to constitute in effect merely a repetition of the exemption rather than an explanation. Such an affidavit fails to fulfill the agency's responsibility under FOIA, a responsibility which must be carried out if the statute is to have its desired effect. Only after a careful review by the agency and the disclosure through a *Vaughn* affidavit can the adversarial procedure properly proceed and judicial *de novo* review properly be conducted with deference toward the agency's expertise. Indeed, the affidavit submitted by the FBI here seems motivated by the improper purposes which initially compelled the *Vaughn* court to require a more reasoned discussion of the withheld documents. As to the *Vaughn* opinion suggested:

> [S]ince the burden of determining the justifiability of a government claim of exemption currently falls on the court system there is an innate impetus that encourages agencies automatically to claim the broadest possible grounds for exemption for the greatest amount of information. Let the court decide. And the tactical ploy is, to the extent that the number of facts in dispute are increased, the efficiency of the court system involved in that dispute resolution will be decreased.

It may well be that in instances of foreign government information for which an exemption is claimed pursuant to classification or national security information under Executive Order 12356, any explanation would compromise the exemption. If that is the explanation for the absence of an explanation, it should be so stated. However, it should be possible to state some explanation relating to the applicability of an exemption of a particular document in a fashion that would not compromise its security. Indeed, what follows hopefully will constitute just such an exercise.

## The In-Camera Review

At the outset of its memorandum in chief the government stated:

> In any event, defendant is willing to provide the documents to the court for an *in camera* inspection which eliminates any possible need for another *Vaughn* affidavit.

(Memorandum of Law in Opposition at 2).

The Plaintiffs responded:

> Thus, the FBI should not be freed from its obligation to prepare a sufficient affidavit for the documents at issue in this motion—and it should not ask the court to prove the FBI's case by an *in camera* review.

(Memorandum in Further Support at 3).

Of course, the Plaintiffs properly concede, *citing Ray v. Turner*, 587 F.2d 1187,

1194–95 (D.C.Cir.1978), that the court may exercise its discretion to conduct a review. In fact the government has submitted the 23 documents unexpurgated, all of which have been made available to the Plaintiffs in edited form. The Plaintiffs urge the court to refrain from a review on two grounds, first, that it is the agency's burden which should not be shifted to the courts by sweeping generalized claims of exemption, *Mead Data Central v. U.S. Department of Air Force*, 566 F.2d 242, 260 (D.C.Cir.1977) and second, that the public interest, which is demonstrated here, should be served by a public justification. It is also for the latter reason that the Plaintiffs place little weight on the off-the-record oral *Vaughn* discussions which have concededly taken place since the filing of the motion.

■ Despite the inadequacy of the FBI's proffered *Vaughn* affidavit described above, the circumstances of this motion call for the exercise of discretion to conduct the *in camera* review. Twenty-three documents remain at issue out of an initial ten-volume file of approximately 2912 pages. The FBI file has become the repository of all the government documents on the subject, including those originating in other agencies. As a consequence, exemptions are claimed not only on behalf of the FBI but also on behalf of the other agencies involved. The file has already been reviewed by the court in connection with the now mooted (b)(7)(A) law enforcement exemption.

In addition, it should be noted that this action was initiated as a consequence of the denial of a request which the Plaintiffs made of the FBI on March 11, 1982 and was filed in this court on July 21, 1982. It has already been the subject of several opinions and one appeal. The interests of justice and finality require a disposition which can then be made the subject of appellate review, if necessary, to resolve the availability of the information at issue.

It may well be that the court initially erred by acceding to the government's request to consider the (b)(7)(A) exemption in isolation without requiring all exemptions to be set forth with respect to each document at that time. On the other hand, the issues have now been reduced to the following twenty-three documents. Administration of FOIA requests and litigation arising under it remains vexatious as this action demonstrates when viewed in its totality.

While the first ground urged by the Plaintiffs, the undesirability of shifting the burden of a proper review from the agency to the courts has a strong appeal, particularly to a court, the course of this litigation makes it necessary for the court to assume the burden of an *in camera* review. As to the public interest, as always, it is hoped that it will be properly served by the explanations which follow.

### Document 6

The exemptions claimed for the related matter are (b)(1)/3,[1] information properly classified under Executive Order 12356, and (b)(5)/5, the National Security Council exemption. The excised portion contains items of an agenda which describes items that do not relate to the request and involve United States policy issues properly classified under (b)(1)/3.

### Document 11

The exemptions claimed are (b)(7)(C)/1, information concerning third party informants, and (b)(7)(D)/2(a) name and identity of source provided under an assurance of confidentiality. The excised portion contains identification and location of an informant properly withheld.

### Document 17–A

The exemptions claimed are (b)(7)(C)/1 and (b)(7)(D)/2(a), described above, and (b)(7)(D)/2(b), information identifying the source of the information. The redactions include descriptive information about an informant and the process by which the in-

---

**1.** The exemptions will be referred to according to the classification used in the Martell affidavit. The classification refers both to the statutory exemptions, which precede the slash, and further subcategories which follow the slash.

formant's information was acquired. The information is properly exempt in view of the informant's request for confidentiality which is not altered by an ambiguous consent to the use of the informant's name if necessary. The inconsistent redaction by the FBI of introductory verbs does not rise to a level requiring further disclosure.

**Document 41**

The first exemption claimed is (b)(7)(D)/3, and the summary analysis in Martell's declaration states that the redacted material is information provided by a Salvadoran official. However, the statutory exemption applies only to confidential sources and is therefore inapplicable to the redacted sentence.

The second exemption claimed is (b)(5)/2, FBI opinions as to the progress of the Salvadoran investigation. The redacted material is an expression of the prior deliberative opinion of an FBI officer and therefore properly exempt.

**Document 70**

The exemptions claimed are (b)(1)/1(a)(3), Department of State information obtained from foreign governments which is classified pursuant to Executive Order 12356. The foreign government exemption is properly claimed as to the redacted material except for the two sentences at the bottom of page one which continue on to page two of the document. These sentences do not include information obtained from foreign governments and must be disclosed except for the names of foreign participants described in the document.

**Document 83**

The exemption claimed is b(1)/1(a)(5), Department of State information regarding foreign relations and activities of the United States classified under Executive Order 12356. The subjective expressions and opinions of both Salvadoran and of United States officials, here redacted, are properly within the exemption claimed by the FBI.

**Document 83–A**

The exemption claimed and its proper exercise is identical to that which applied to Document 83.

**Document 84**

The exemption claimed is (b)(1)/(1)(a)(9), a confidential source exempt by virtue of classification under Executive Order 12356. The first redacted sentence describes the source and is properly exempt. The second and third sentences offer information which does not tend to identify the source and are therefore not exempt. The final two sentences are properly exempt as information which tends to identify the source.

**Document 85**

The exemption claimed is the same as that claimed for Document 84. The first redacted paragraph tends to identify the source and is properly exempt. The next redacted paragraph does not identify the source and is not properly exempt except for the last sentence which tends to identify the source. The following two paragraphs tend to identify the source by the nature of the acquisition of the knowledge and information set forth and are properly exempt. The final paragraph stating the motivation and belief of the source tend to identify the source and is properly exempt.

**Document 86**

The exemption claimed is the same as set forth with respect to Document 84 and the redacted material consists of seven paragraphs, the first six of which contain both information which tends to identify the source and is properly withheld. The seventh paragraph beginning with the word "Comment" does not tend to identify the source. It is independent of the source and, therefore, not properly exempt other than as relating to the identification of United States personnel.

**Document 88**

The exemption claimed is (b)(1)/1(a)(5), the foreign relations and activities of the United States. The material redacted by the Department of State as confidential analysis and recommendation for action is properly exempt under Executive Order 12356.

## Document 92

The exemptions claimed are (b)(1)/1(a)(3) and (5). The redacted material is a government official analysis relating foreign relations activities of the United States and therefore properly exempt.

## Document 92A

The exemption claimed is (b)(1)/1(a)(9), a confidential source, and the first redacted material tends to identify the source and is properly redacted. The later redactions are based on the foreign government and relations exemption, (b)(1)/1(a)(3) and /5, and recount a discussion between government officials which is properly exempt.

## Document 108

The exemption claimed is (b)(1)/1(a)(5) and the redacted material refers to foreign relations activities of the United States and is properly exempt.

## Document 222

The exemptions claimed are (b)(7)(C)/1, (b)(7)(C)/2(b), (b)(7)(D)/1(a), (b), and (b)(7)(D)/7, the confidentiality and unwarranted invasion of personal privacy exemptions. There is nothing in the document to establish any implied confidentiality for the sources involved or that the information would constitute an unwarranted invasion of privacy and it is not properly exempt except for the sources' addresses, telephone numbers, current places of employment and physical characteristics as to which disclosure would be unfairly intrusive. Moreover, there is no basis, from the face of the document, to justify the redaction of only one source's name.

## Document 225

The exemptions claimed are (b)(7)(C)/7 and (D)/9. The (b)(7)(C)/7 exemption is properly requested by the U.S. Marshal's Service. Since the rest of the redacted information tends to identify a confidential source, it is properly exempt. The confidentiality needed to protect the source may properly be implied from the information describing the source's activity and status which indicate the possibility of reprisal.

## Document 227

This document is subject to the same ruling as Document 222 to which it is substantially similar.

## Document 308

The exemptions claimed are (b)(7)(C)/1 and (b)(7)(D)/2(a), name and identify of confidential source. The redacted information tends to identify a source and is properly exempt.

## Document 321

The exemptions claimed are (b)(7)(C)/7 and (b)(7)(D)/9. The redacted material is a portion of that same information held properly redacted in Document 225.

## Document 470A

Exemptions claimed are (b)(7)(C)/2, (b)(7)(D)/2(a) and (b). The redacted information tends to identify the source and is properly exempt, except as to the information on the last line on page two which does not have that quality and was improperly redacted.

## Document 643

The exemptions claimed are (b)(6), (b)(7)(C)/8 and (b)(7)(F). The redaction of the identity of the government official on page 2 is proper. The exemption claimed for pages 3, 4 and 5, is (b)(7)(C) and (b)(7)(D)/1(a) and the information redacted tends to identify the source and is properly exempt and the (b)(7)(A)/1(1) exemption was properly exercised on page 5 and 6 for the redacted material since it is outside the scope of the inquiry.

## Document 644A

The exemption claimed is (b)(7)(C)/2(a), (b)(7)(C)/1, (b)(7)(B)/1(a), (b)(7)(C)/2(d), (b)(7)(D)/1(a) and the redacted material tends to identify a possible source and is properly exempt.

## Document 644B

The exemption claimed is (b)(7)(C)/1, (b)(7)(D)/1(a) and (b), and the redacted material tends to identify the source and is properly exempt.

## Conclusion

The government will turn over the redacted portions where required under the

rulings set forth. Compliance will be stayed twenty (20) days from the date hereof to permit an application for a further stay pending appeal. Following the required disclosure, this action and its companion case will be dismissed without costs.

IT IS SO ORDERED.