JAN–XIN ZANG, Plaintiff,

v.

**FEDERAL BUREAU OF INVESTIGA-
TION, United States Department of
Justice, Defendant.**

**No. CIV–89–488S.**

United States District Court,
W.D. New York.

Feb. 7, 1991.

Gerard J. O'Brien, Parrino, Cooper, Butler & Dobson, Buffalo, N.Y., for plaintiff.

Dennis C. Vacco, U.S. Atty., by Donald Simet, Asst. U.S. Atty., Buffalo, N.Y., for defendant.

## DECISION AND ORDER

SKRETNY, District Judge.

## INTRODUCTION

Now before this Court is the defendant's motion ("motion") for dismissal of plaintiff's lawsuit pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1). Because both parties have submitted affidavits beyond the pleadings which this Court has considered in ruling on the motion, pursuant to Fed.R. Civ.P. 12(c) this Court shall treat the motion as one for summary judgment.

This Court has jurisdiction over this lawsuit pursuant to 5 U.S.C. § 552(a)(4)(B).

Jan–Xin Zang ("plaintiff") sued the Federal Bureau of Investigation ("FBI") of the United States Department of Justice pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"), alleging that the FBI and United States Department of

State (for sake of convenience referred to collectively as "the government") improperly withheld information pertaining to plaintiff which plaintiff requested pursuant to the FOIA.[1] Plaintiff seeks the following relief: that this Court conduct an in camera examination of all withheld materials to determine whether the government properly withheld from disclosure all or part of the materials under FOIA, actual damages and attorneys' fees.

The government contends that its submission of Vaughn indices[2] satisfies its burden under the FOIA and, therefore, asks this Court to decline an in camera examination and dismiss plaintiff's lawsuit as a matter of law.

In support of its motion, the government submits three Vaughn indices in the form of affidavits with exhibits from: FBI Special Agent Timothy L. Sullivan ("Sullivan"); Acting Deputy Director of Mandatory Review of the Classification/Declassification Center of the U.S. Department of State, Frederick Smith, Jr. ("Smith"); and FBI Special Agent Paul M. Moskal ("Moskal"). The government also submits a chart ("Chart") briefly describing each item of information withheld keyed to the exemption under which the government withheld it and cross-referenced to the relevant portions of the Vaughn indices supporting the claimed exemption. The government further submits a legal memorandum and supplemental memorandum ("government's memo," "government's supp. memo") and a Statement of Material Undisputed Facts ("government's fact statement").

In opposition to the motion, the plaintiff submits a legal memorandum ("plaintiff's memo") and its Affidavit In Opposition with exhibits ("plaintiff's affidavit").

---

1. As will be discussed below, some of the documents at issue in this lawsuit originated with the U.S. Department of State, although that agency was not named a party to this lawsuit—apparently because it was not until discovery was undertaken that the origin of the Department of State documents was revealed. Although the Department of State is not a named party, the United States Attorney has defended this lawsuit with respect to all documents, satisfying this Court that the interests of the Depart-ment of State have been appropriately and thoroughly represented.

2. Stemming from Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), a Vaughn index "is an affidavit by a federal agency furnishing the court with enough information to determine the validity of a claimed [FOIA] exemption." John Doe Corp. v. John Doe Agency, 850 F.2d 105, 107 n. 1 (2d Cir.1988).

*Conclusion:* For the reasons set forth below, this Court grants defendant's motion in its entirety.

## FACTS

The following material facts are not in dispute.

Plaintiff is a Chinese national presently in the United States pursuant to a visa. Plaintiff is a graduate student in the Department of Physics at the State University of New York at Buffalo.

By letter dated July 29, 1988, and addressed to the Freedom of Information Officer, Federal Bureau of Investigation, 111 West Huron Street, Buffalo, New York plaintiff requested "all records filed under my name." (plaintiff's affidavit, Exh. 1). By letter dated August 3, 1988, the FBI at Buffalo responded by requesting additional information from plaintiff to assist in processing plaintiff's request. (plaintiff's affidavit, Exh. 2). By letter dated August 8, 1988, plaintiff supplied the FBI the requested additional information. (plaintiff's affidavit, Exh. 3).

By letter dated August 17, 1988, FBI Assistant Special Agent Van Harp notified plaintiff that a search of the government's central records system located six documents responsive to plaintiff's request although only three of the documents originated with the FBI. The FBI referred plaintiff's request to the Department of State, where the other three documents originated, for that agency's independent determination. (plaintiff's affidavit, Exh. 3). The FBI withheld from disclosure the three documents originating with it, totaling four pages, pursuant to four separate statutory exemptions from disclosure contained in the FOIA. (plaintiff's affidavit, Exh. 3). By letter dated August 31, 1988, addressed to the Assistant Attorney General, Office of Legal Policy, plaintiff appealed

the FBI's decision. (plaintiff's affidavit, Exh. 4).

By letter dated September 9, 1988, the United States Department of Justice acknowledged receipt of plaintiff's administrative appeal. However, the processing of plaintiff's administrative appeal was delayed due to a backlog of pending FOIA appeals. (Moskal, Exhs. G, I, and K).

On June 26, 1989, the Department of State responded to that portion of plaintiff's request which located three documents originating with it; the Department of State withheld two of the three documents on the grounds that they pertained to the issuance or refusal of a visa pursuant to 8 U.S.C. § 1202(f) and therefore were exempt from disclosure under the FOIA. The State Department released to plaintiff the third document, plaintiff's visa application, with redactions. (government's fact statement, ¶ 7).

On August 23, 1989, the Buffalo office of the FBI declassified portions of the three documents originating with the FBI which the FBI had originally withheld from disclosure to plaintiff. The FBI released these documents to plaintiff with redactions. (government's fact statement, ¶ 8).

■ On April 6, 1989, plaintiff commenced this lawsuit[3] seeking, *inter alia,* this Court's *in camera* examination of all withheld materials to determine whether the government properly withheld this information pursuant to the FOIA.

## DISCUSSION

### 1. *Summary Judgment Standards*

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.

---

**3.** This Court concludes that, pursuant to 5 U.S.C. § 552(a)(6)(C), plaintiff has exhausted his administrative remedy. As to the three documents originating with the FBI, the Department of Justice failed to make a determination with respect to plaintiff's appeal of the FBI's decision within twenty business days of receipt

of the appeal pursuant to 5 U.S.C. § 552(a)(6)(A)(ii). As to the three documents originating with the Department of State, that agency failed to respond to plaintiff's FOIA request within the 10 day period mandated by 5 U.S.C. § 552(a)(6)(A)(i).

R.Civ.P. 56(e). Once that burden is met, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Courts should not be reluctant to grant summary judgment in appropriate cases since "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), thereby permitting courts to avoid "protracted, expensive and harassing trials." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

Applying this standard to the present case, the Court must dismiss plaintiff's lawsuit.

### 2. *The FOIA and Its Exemptions*

By enacting the FOIA, Congress "sought 'to open agency action to the light of public scrutiny' ... by requiring agencies to adhere to 'a general philosophy of full agency disclosure.'" *Department of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 2846, 106 L.Ed.2d 112 (1989) (citations omitted). Therefore, upon public request federal agencies must disclose records and related materials in their possession unless the material falls within one of the FOIA's nine exemptions contained at 5 U.S.C. § 552(b)(1)–(b)(9).

5 U.S.C. § 552(a)(4)(B) provides that a district court review *de novo* the government's exemption claims and also authorizes district courts to examine records *in camera* "to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in [§ 552(b)]...."

■ When withholding requested information, the government bears the burden of demonstrating the applicability of a claimed exemption. *See, Lawyers Committee for Human Rights v. I.N.S.*, 721 F.Supp. 552, 560 (S.D.N.Y.1989).

### 3. *Sufficiency of Vaughn Indices and In Camera Examination Generally*

The government may sustain its burden of proof as to the applicability of any FOIA exemption contained in 5 U.S.C. § 552(b) by submission of a *Vaughn* index which

describe[s] with reasonable specificity the nature of the documents at issue and the claimed justification for nondisclosure, and that indicate[s] the requested material logically comes within the claimed exemption.

*Malizia v. U.S. Dept. of Justice*, 519 F.Supp. 338, 342 (S.D.N.Y.1981). *See, Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

However, as several federal courts have emphasized, a *Vaughn* index provided by the government in support of a claimed exemption must be specific enough so that this Court may rule on the propriety of the claimed exemption. Recently, the Southern District said:

Specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague and sweeping.'

*Lawyers Committee for Human Rights*, 721 F.Supp. at 560 (quoting *King v. U.S. Dept. of Justice*, 830 F.2d 210, 219 (D.C. Cir.1987) (further citations omitted)). For each withheld portion of information, the government's *Vaughn* index must describe the redaction, the exemption under which the government withheld the information and explain the applicability of the claimed exemption. *See, Donovan v. FBI*, 625 F.Supp. 808, 810 (S.D.N.Y.1986) (citations omitted), *modified*, 806 F.2d 55 (2d Cir. 1986); *King v. U.S. Dept. of Justice*, 830 F.2d at 224 (citations omitted).

■ Although 5 U.S.C. § 552(a)(4)(B) authorizes this Court to examine *in camera* material withheld by the government in this case, if the government's *Vaughn* indices sufficiently detail the nature of the material withheld and the applicability of the relevant exemption(s), as discussed im-

mediately above, the government has met its burden and this Court's inquiry ends.

Moreover, a district court should be generally reluctant to conduct an *in camera* examination since "*[i]n camera* inspections are burdensome and are conducted without the benefit of an adversary proceeding." *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 697 (D.C.Cir.1977) (citing *Vaughn v. Rosen*, 484 F.2d at 824). Also, as discussed below, this Court's reluctance is substantially magnified with respect to material withheld pursuant to Exemption One since this Court has little working grasp of national security matters and related intelligence concerns.

In this case, plaintiff asks this Court to conduct an *in camera* examination to determine whether the government properly withheld from disclosure all or part of the material under FOIA. The government contends the *Vaughn* indices satisfy its FOIA obligations and, therefore, that this Court decline *in camera* examination and dismiss plaintiff's lawsuit.

Therefore, this Court must examine the government's *Vaughn* indices with respect to all material withheld. If the *Vaughn* indices are sufficient in accordance with the above standards, this Court must dismiss plaintiff's lawsuit.

### 4. *Material Withheld*

As noted above, in response to plaintiff's request, the government identified six documents cross-referencing plaintiff's name. Three documents originated with the FBI (numbered below for convenience 1–3) and three documents originated with the Department of State (numbered below for convenience 4–6).

According to the government's *Vaughn* indices and Chart, the six documents may be briefly described as follows: a routing slip from FBI headquarters to FBI Buffalo ("Document 1"); an internal FBI memorandum ("Document 2"); an FBI computer printout ("Document 3"); a Department of State document—a telegram from the U.S. Embassy at Beijing, China dated June 13, 1988, relating to various visa applicants, including plaintiff, and their visa eligibility ("Document 4"); a Department of State document—a telegram from the U.S. Embassy at Beijing, China dated October 4, 1984, relating to the processing of plaintiff's visa application and plaintiff's visa eligibility ("Document 5"); and a Department of State document—plaintiff's visa application containing notes of a Department of State official relating to plaintiff's visa eligibility ("Document 6").

Only documents 4 and 5 were withheld in their entirety. Documents 1, 2, 3 and 6 were released to plaintiff with portions redacted, pursuant to various exemptions as discussed below.

### 5. *Claimed Exemptions*

#### a. Exemption One

█ 5 U.S.C. § 552(b)(1) ("Exemption One") exempts from disclosure information:

(A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and

(B) are in fact properly classified pursuant to such Executive Order....

Pursuant to Exemption One, the government has withheld portions of documents 1, 2 and 3, all originating with the FBI, pursuant to Executive Order 12356 § 1.3(a)(4).

Generally, Executive Order ("E.O.") 12356 of April 2, 1982, 47 Fed.Reg. 14874 (1982), as amended at 47 Fed.Reg. 15557 (1982), codified at 3 C.F.R. 166 (1983), *inter alia*, categorizes certain types of information as classified; the President has determined that "the interests of the United States and its citizens require" that classified information "be protected against unauthorized disclosure." Only certain government officials designated by the President have authority to classify information and, of course, only certain authorized persons may have access to information classified pursuant to Executive Order 12356.

E.O. 12356 § 1.3(a)(4) ("§ 1.3(a)(4)") provides that information concerning

intelligence activities (including special activities), or intelligence sources or methods constitutes classified information and, as such, is not accessible to the public.

In this case, FBI Special Agent Sullivan is a classification authority responsible for classifying FBI information as mandated by E.O. 12356. (Sullivan, p. 1). Before withholding information pursuant to Exemption One, Sullivan determined that the information ultimately withheld from documents 1, 2 and 3 fell within the scope of § 1.3(a)(4). (Sullivan, pp. 2–3). According to Sullivan, all the information withheld pursuant to Exemption One in this case is information pertaining to intelligence activities, sources or methods, information not only squarely within § 1.3(a)(4) but "needed by the FBI to carry out its mission" and which must be kept confidential to be useful. (Sullivan, p. 6). Furthermore, Sullivan asserts, "any greater specificity in the descriptions and justifications set forth with respect to intelligence sources, methods and activities ... could reasonably be expected to jeopardize the national security of the United States." (Sullivan, p. 9).

The *Vaughn* index of FBI Special Agent Sullivan, as well as the Chart, identifies four types of intelligence information claimed within E.O. 12356 § 1.3(a)(4) which the FBI redacted from Documents 1, 2 and 3 pursuant to Exemption One: (i) information pertaining to intelligence activities or methods; (ii) intelligence file number(s); (iii) intelligence source information; and (iv) "other detailed information which could identify a source." (Chart, p. 2; Sullivan, p. 14).

### (i). *Intelligence Activities or Methods*

According to FBI Special Agent Sullivan, the FBI utilizes certain intelligence activities or methods in order to fulfill its intelligence responsibilities. (Sullivan, p. 15). The information includes assessments of intelligence sources in various areas of intelligence interest. (Sullivan, p. 15). Sullivan has identified several ways disclosure of information relating to these activities or methods could damage national security, including the revelation of: a particular

investigation, FBI objectives or priorities and/or the existence or availability of intelligence sources. (Sullivan, pp. 6–8, 16). Sullivan asserts that this information with respect to plaintiff is specific and, therefore, its disclosure would "automatically reveal to a hostile intelligence analyst United States intelligence gathering capabilities in a particular area during a specific period." (Sullivan, pp. 16–17).

### (ii). *Intelligence File Numbers*

According to Sullivan, the FBI assigns individual file numbers to intelligence activity files. These file numbers can identify "specific categories of intelligence activities." (Sullivan, p. 18). The government posits that disclosure of such file numbers could damage national security because, in part, a hostile analyst can identify intelligence activity from piecing together file numbers. (Sullivan, p. 18). In this case, Sullivan concluded that disclosure of intelligence file numbers withheld from plaintiff "can lead to the exposure of actual intelligence activities." (Sullivan, p. 19).

### (iii). *Intelligence Source Information*

According to Sullivan, an intelligence source identifier is "any word, term or phrase which could identify an intelligence source or method either released by itself or in the *aggregate*," including names of sources, code names, numerical designator, etc., which is used instead of the true identity of the source or method. (Sullivan, p. 20) (emphasis supplied). Although use of the source identifier greatly reduces the chance that revelation of secret intelligence information will occur, according to Sullivan, a hostile analyst, by matching source identifiers "with bits and pieces of information" could deduce the identity of an intelligence source. According to Sullivan, the disclosure of a source identifier would "neutralize the source." (Sullivan, pp. 21–22).

### (iv). *Other Detailed Information Which Could Identify A Source*

According to Sullivan, information in this category is highly specific in nature or "of a unique character, and thereby could lead to the identification of the source," such as information obtained from conversations

between a source and third parties. (Sullivan, p. 23). According to Sullivan, this information is so specific that disclosure of it "endangers the source's continued anonymity" and would enable a hostile analyst to "unravel the cloak of secrecy that protects the source's identity," thereby rendering the source non-effective. (Sullivan, p. 24).

Having studied the Sullivan affidavit, this Court must note that its general reluctance to undertake *in camera* examination is magnified with respect to information withheld pursuant to Exemption One since "[f]ew judges have the skill or experience to weigh the repercussions of disclosure of intelligence information." *Weissman v. CIA,* 565 F.2d at 697. As the Second Circuit has admonished, this Court must accord "substantial weight" to agency affidavits which implicate national security. *Doherty v. Department of Justice,* 775 F.2d 49, 52 (2d Cir.1985); *See, Reader's Digest Ass'n, Inc. v. F.B.I.,* 524 F.Supp. 591, 594 (S.D.N.Y.1981) (legislative history of Exemption One indicates Congress' intention that district courts afford substantial weight to government's classification decision). However, the government may not in "rubber stamp" fashion claim national security to shield disclosable material. *Lawyer's Committee for Human Rights,* 721 F.Supp. at 560.

This Court delicately balances the competing interests of withholding from disclosure classified information to protect national security as against ordering government disclosure, to a reasonable degree, of the information withheld to demonstrate the propriety of an Exemption One withholding.

In this case, with respect to material withheld pursuant to Exemption One, this Court concludes that the *Vaughn* index of Special Agent Sullivan is sufficient to meet the government's burden of proof. Sullivan's affidavit identifies the type of material withheld, the applicability of Exemption One to this type of material and that this material concerns "intelligence activities, sources and methods"—information classified pursuant to § 1.3(a)(4)—the disclosure of which creates a threat to national security. *See, Lawyers Committee for Human Rights,* 721 F.Supp. at 564; *Doherty v. U.S. Department of Justice,* 775 F.2d at 52.

**b. Exemption Three & 8 U.S.C. § 1202(f)**

■ 5 U.S.C. § 552(b)(3) ("Exemption Three") exempts from disclosure material specifically exempted by another statute provided that such other statute:

(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld....

8 U.S.C. § 1202(f) (§ 222(f) of the Immigration and Nationality Act, hereinafter "§ 222(f)") provides:

The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas ... to enter the United States shall be considered confidential ... except that in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

According to Frederick Smith, Jr., a Department of State official, documents 4 and 5 in their entirety and the withheld portion of document 6 pertain directly to the issuance of plaintiff's visa within the scope of § 222(f) and therefore are exempt from disclosure pursuant to Exemption Three. (Smith, ¶¶ 7–9).

This Court agrees with the government that this information is within the scope of § 222(f) and therefore is properly withheld from disclosure pursuant to Exemption Three. Smith's *Vaughn* index on its face satisfies Exemption Three; it demonstrates with sufficient detail that the claimed Exemption Three material relates to the issuance of plaintiff's visa.

Although the Second Circuit has not squarely addressed this issue, in *Medina–Hincapie v. Department of State*, 700 F.2d 737 (D.C.1983), the District of Columbia Circuit held that information relating to the issuance of a visa under § 222(f) was properly withheld from disclosure pursuant to Exemption Three. At least one other Court of Appeals has similarly so held. *See, DeLaurentiis v. Haig*, 686 F.2d 192, 193 (3d Cir.1982).

In addition in *Medina–Hincapie*, the D.C. Circuit held that § 222(f) did not merely restrict disclosure of information supplied by the visa applicant but "information revealing the thought processes of those who rule on the application." *Id.* at 744. Thus, in this case, that portion of document 6 containing the notes of a consular officer relating to plaintiff's visa eligibility was also properly withheld from disclosure under Exemption Three.

#### c. Exemption Two

■ 5 U.S.C. § 552(b)(2) ("Exemption Two") exempts from disclosure matters "... related solely to the internal personnel rules and practices of an agency...." Pursuant to Exemption Two the government redacted certain administrative markings in documents 5 and 6 and a "source symbol number" and a "source file number" in document 1. (government memo, p. 16).[4]

According to FBI Special Agent Paul Moskal, source symbol and file numbers are "internal identifiers for administrative control...." The FBI numerically catalogues sources and assigns the sources "sequential numerical source files" allowing "the FBI to more efficiently direct investigative documents to proper files and attribute information to sources without specifically identifying that source." (Moskal, p. 8). Furthermore, according to Moskal, source numbers "have absolutely no

effect on the substance of the information, and would serve no benefit to the public by their release." (Moskal, p. 8). On the other hand, release of sources and other administrative markings or numbers could potentially cause great damage to the government:

> great harm to the source and Bureau operations could result from the release of these markings, since the accumulation of information known to be from the same source, coupled with an intimate knowledge of the circumstances surrounding an investigation may allow an individual to analyze this data and thus result in detection and exposure of individuals furnishing information to the FBI in confidence.

(Moskal, p. 8)

This Court agrees with the government that source symbols and administrative markings are exempt from disclosure under Exemption Two. In *Malizia v. U.S. Dept. of Justice*, 519 F.Supp. 338, 344 (S.D. N.Y.1981), the Southern District confronted the same issue here: whether source symbols (such as in this case) are exempt from disclosure under Exemption Two. Citing other decisions, the Court concluded there was no legitimate public interest in the FBI's practice of labelling and identifying its sources while, on the other hand, significant harm to the source and to the FBI could result from release of source symbols since "accumulation of information known to be from the same source could permit detection...." *Id.* at 344–45. This reasoning applies with equal force to administrative markings.

The government also claims that source symbols are exempt from disclosure under § 552(b)(7)(D) ("Exemption Seven (D)"), a provision exempting from disclosure the identity of confidential sources. Since this Court holds the government redacted all source symbols properly under Exemption

---

4. This Court must note contradictions in the government's own papers with respect to which documents contain Exemption Two redactions. According to the Chart, only documents 2 and 6 contain Exemption Two redactions. However, as already discussed above, the government's memo states that documents 1, 5 and 6 contain Exemption Two redactions. The contradiction, however, proves inconsequential since no matter which documents contain these Exemption Two redactions, this Court holds all administrative markings and source symbol and file numbers properly redacted under Exemption Two as a matter of law.

Two, this Court does not address whether source symbol numbers were properly redacted under Exemption Seven (D).

### d. Exemption Seven (C)

 5 U.S.C. § 552(b)(7)(C) ("Exemption Seven (C)") exempts from disclosure records or information compiled for "law enforcement purposes" but only to the extent that their production:

> could reasonably be expected to constitute an unwarranted invasion of personal privacy....

Pursuant to this exemption, the government withheld names and initials of FBI agents and employees and the name of at least one third party in all six documents. (government memo, pp. 12–13).

According to FBI Special Agent Moskal, release of names and/or initials of FBI agents who participated in any investigation of plaintiff "could jeopardize the current investigative activity of these agents" with no important countervailing public interest. (Moskal, p. 11). Similarly, the government contends that release of names and/or initials of FBI employees assisting in any investigation of plaintiff is an intrusion of privacy with no important countervailing public interest and/or no showing of need for such names and/or initials by the plaintiff. (Moskal, pp. 11–12). Lastly, the government asserts that release of identities of and file numbers pertaining to third parties arising in connection with any investigation of plaintiff would breach the FBI's obligation to protect the privacy rights of individuals mentioned in its files and could reveal information about pending investigations. (Moskal, pp. 12–13).

This Court agrees that Exemption Seven (C) exempts from disclosure names and initials of FBI agents and employees and the names of or file numbers pertaining to third parties. It is well settled in this Circuit that the government may withhold names of government agents, employees and third parties. *See, Doherty v. U.S. Department of Justice,* 775 F.2d at 52 ("Identities of FBI agents, of FBI non-agent personnel, or employees of the Immigration and Naturalization Service, and of third-parties in whom the FBI has an investigatory interest are embraced by exemption (b)(7)(C).") In this case, plaintiff has conceded that he "does not wish names or initials of agents or informants," (pl memo p. 1), and certainly demonstrates no countervailing public interest or need for such information.

### CONCLUSION

For the reasons set forth above, this Court grants the defendant's motion in its entirety.

### ORDER

IT HEREBY IS ORDERED, that the defendant's motion for summary dismissal is GRANTED.

FURTHER, that the Clerk of the United States District Court for the Western District of New York is directed to enter final judgment for defendant and to dismiss plaintiff's action in accordance with this decision.

SO ORDERED.